## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

RAYMOND M. MARTIN,

      Petitioner,

          v.

UNITED STATES OF AMERICA,

      Respondent.

Case No. 15-cv-00311-JPG

### MEMORANDUM AND ORDER

This matter comes before the Court on Petitioner Raymond M. Martin's Motion (Doc. 1) to Vacate, Set Aside or Correct his sentence pursuant to 28 U.S.C. § 2255. The Government filed a timely response (Doc. 13) and the Petitioner filed a reply (Doc. 18). Petitioner also filed a Motion (Doc. 2) to Supplement the Petition and the Government filed a response to the supplement (Doc. 23). Petitioner then filed a reply (Doc. 24).

The Court has reviewed the motion, briefs, and the records of this case and has determined that an evidentiary hearing is not warranted as the file and records conclusively demonstrates that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b).

1. **Background.**

On September 23, 2010, Raymond M. Martin was found guilty at trial of the fifteen offenses alleged in the Second Superseding Indictment including distribution of marijuana, carrying a firearm during a drug trafficking crime, and witness tampering. *See United States v. Martin*, 09-cr-40037-JPG, Doc. 79. He was sentenced on January 19, 2011, to custody of the Bureau of Prisons for 60 months as to Counts 1, 2, 3, 6, and 15 (all counts to run concurrent); 120

Page **1** of **24**

months as to Counts 7 through 14 (to run consecutive to counts 1, 2, 3, 6 and 15); life with regard to Count 4 (to run consecutive to Counts 1, 2, 3, 6, and 7 through 15); and life with regard to Count 5 (to run consecutive to Court 4).  *See United States v. Martin*, 09-cr-40037-JPG, Doc. 138. Petitioner appealed and the United States Court of Appeals for the Seventh Circuit affirmed the conviction, but vacated the sentence.  *See USA v. Martin*, 692 F.3d 760 (7th Cir. 2012).

The case was remanded for resentencing and a hearing was conducted on December 7, 2012.  Petitioner was resentenced by the Court to the same sentence as indicated above.  *See United States v. Martin*, 09-cr-40037-JPG, Doc. 253. The Petitioner again appealed and that appeal was dismissed on February 6, 2014.  *See USA v. Martin*, 554 Fed.Appx. 515 (7th Cir. 2014).

Petitioner filed his 28 U.S.C. § 2255 Petition on March 20, 2015, alleging ineffective assistance of counsel.  A judgment of conviction becomes final for § 2255 purposes when the time expires for filing a petition for *certiorari* contesting the appellate court's decision affirming of the conviction.  *Clay v. United States*, 537 U.S. 522, 524-25 (2003).   The period for filing such a petition expires 90 days after the court of appeals enters judgment or denies a petition for rehearing.  S. Ct. R. 13.   As such, Petitioner's 28 U.S.C. § 2255 Petition was timely filed.

2.  **Standard.**

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States."   28 U.S.C. § 2255.  However, "[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting

*Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013)).   It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief."   28 U.S.C. § 2255(b); *see Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009).

Further, a defendant cannot raise in a § 2255 motion constitutional issues that he could have but did not raise in a direct appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal or unless failure to consider the claim would result in a fundamental miscarriage of justice.   *Massaro v. United States*, 538 U.S. 500, 504 (2003).   Neither is a § 2255 motion necessarily a second chance at an appeal.   *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007).   Applying the "law of the case" doctrine, the Court may refuse to consider issues in a § 2255 motion that a defendant raised on direct appeal where there are no changed circumstances of fact or law.   *Id.*; *Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005); *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995); *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992).

With regard to the petitioner's allegations of ineffective assistance of counsel, the failure to hear a claim for ineffective assistance of counsel in a § 2255 motion is generally considered to work a fundamental miscarriage of justice because often such claims can be heard in no other forum.   They are rarely appropriate for direct review since they often turn on events not contained in the record of a criminal proceeding.   *See Massaro v. United States*, 123 S.Ct. 1690, 1694-5 (2003).   In addition, the district court before which the original criminal trial occurred, not an appellate court, is in the best position to initially make the determination about the effectiveness of counsel in a particular trial and potential prejudice that stemmed from counsel's performance.

For these reasons, ineffective assistance of counsel claims, regardless of their substance, may be raised for the first time in a § 2255 petition.   *Id.*

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."   U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel.   *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009).   A party claiming ineffective assistance of counsel bears the burden of showing (1) that counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense.   *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 2431 (2010); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).

To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel.   *Wyatt*, 574 F.3d at 458.   The Court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance.   *Id.*   The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   *Strickland*, 466 U.S. at 689; *accord Wyatt*, 574 F.3d at 458.   Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record.   *Strickland*, 466 U.S. at 689.   The Court cannot become a "Monday morning quarterback."   *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694).

Finally, the Court must liberally construe *pro se* pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998). However, Courts are not obliged to craft arguments or perform necessary legal research for *pro se* litigants, because even *pro se* litigants must put forward some legal argument in support of their contentions. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001); *Mathis v. New York Life Ins.*, 133 F.3d 546, 548 (7th Cir.1998); *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990).

3.   **Analysis.**

In the initial motion, Petitioner alleges eight claims of ineffective assistance of counsel. Petitioner's supplemental material has been considered and addressed within the appropriate initial claim. The Court will address each of the Petitioner's claims in the order raised in Petitioner's motion.

    (1)   Whether Petitioner was denied due process by ineffective assistance of counsel for failing to object to the lack of a federal nexus.

Petitioner argues that there was no evidence to support federal jurisdiction over the offenses and that his counsel was ineffective for failing to object that a federal cause of action

existed.   Petitioner cites to *United States v. Lopez*, 514 U.S. 549 (1995) as setting out the, "interstate nexus necessary (sic) in order to establish federal jurisdiction."   He notes that it is the government's burden to prove jurisdiction and to prove, "that the accused's conduct affected interstate commerce."   (Doc. 1-1, pgs 11 & 12).

Specifically, petitioner argues that his alleged conduct involved stealing marijuana from an evidence room and selling it, but not that the marijuana was "transported or otherwise flowed through interstate commerce."   (Doc. 1-1, pg 11).   While *Lopez* does set the framework for federal jurisdiction, the case involved a particular statute or provision that fell entirely outside of Congress' commerce power.   That is not the case with regard to the marijuana market.

> In *Raich,* the Court addressed Congress's authority to regulate the marijuana market. The Court reaffirmed "Congress' power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." 545 U.S., at 17, 125 S.Ct. 2195. The production, possession, and distribution of controlled substances constitute a "class of activities" that in the aggregate substantially affect interstate commerce, and therefore, the Court held, ***Congress possesses the authority to regulate (and to criminalize) the production, possession, and distribution of controlled substances even when those activities occur entirely within the boundaries of a single State.*** Any other outcome, we warned, would leave a gaping enforcement hole in Congress's regulatory scheme. *Id.,* at 22, 125 S.Ct. 2195.
>
> *Taylor v. United States*, 136 S. Ct. 2074, 2080, 195 L. Ed. 2d 456 (2016)(emphasis added).

As such, the distribution of controlled substances – regardless whether the activity is local or interstate – has been deemed to substantially affect interstate commerce.   Further, as the government notes, there was factual evidence at trial that the petitioner obtained marijuana from Tennessee and that he was aware that such product was being obtained from Tennessee.   *See United States v. Martin*, 09-cr-40037-JPG, Doc. 127, pg. 530.

Therefore, petitioner's counsel was not ineffective for failing to object to the lack of a federal nexus as such an objection would be frivolous.

    (2)    Whether Petitioner was denied due process by ineffective assistance of counsel for failing to request a *Franks* hearing challenging the accuracy of the statements of Jeremy Potts.

Petitioner claims that, "Potts, or otherwise the informant, gave false testimony while testifying at the petitioner's trial." Further, petitioner claims that Mr. Potts gave a false statement, "in a police statement initiating the investigation." Therefore, petitioner claims that his counsel should have moved for a *Franks* hearing and also "moved the court to suppress all of the evidence procured by law enforcement." (Doc. 1-1, pg. 15).

The Petitioner cites to *Franks v. Delaware,* 438 U.S. 154 (1978) which held:

[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was including by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the fact of the affidavit. *Id.* at 155-56.

First, Petitioner does not mention a search warrant in his arguments. He only states that Potts gave false testimony at trial and in a police statement. Petitioner never states that such false statements were used to obtain a search warrant. The government provided a copy of the three warrants that were issued in petitioner's criminal investigation. (Docs. 13-7, 8, & 9). As the

government states, not one of these warrants reference the false statement by Mr. Potts that petitioner "put a gun to his head and threatened him." Also, even if a false statement was included in one of the affidavits, there is no allegation by the petitioner that the individual[1] attesting to the warrants' affidavits knowingly and intentionally, or with reckless disregard for the truth, included the statement.

The Court has reviewed the affidavits and has found each to be well supported by personal observation of the attester and other law enforcement agents along with various surveillance and recorded transactions.

Petitioner's arguments that, "Counsel for the petitioner failed to obtain the phone records which would indicate that there were certain calls made by Potts to the petitioner which were not part of law enforcement operation" has no bearing on the warrants as these calls were not the basis for any of the warrants.   Further, the government indicates that the records were provided to petitioner's counsel in discovery on March 10, 2010.   (Doc. 13, pg 46, n. 14).

The only issue with regard to a *Franks* hearing is whether a false statement knowingly and intentionally, or with reckless disregard for the truth, was including by the affiant in the warrant affidavit.   Here, the petitioner has not made any showing, let alone a substantial showing, that such a statement was included.   Therefore, petitioner's counsel was not ineffective for failing to request a *Franks* hearing.

     (3)    Whether Petitioner was denied due process by ineffective assistance of counsel for failing to present an alibi defense;

        ***and***

---

1 Glenn H. Rountree attested to all three affidavits in support of the issuance of the search warrants.

(4)     Whether Petitioner was denied due process by ineffective assistance of counsel for failing to investigate Petitioner's alibi defense including interviewing witnesses with regard to Petitioner's alibi defense.

The Court will address issues (3) and (4) together as they both relate to whether petitioner's counsel had an obligation to present and/or investigate an alibi defense.   Petitioner argues that, as sheriff of Gallatin County, he was conducting a "sting" operation and that his active involvement in the operation is what "subsequently evolved to the charges and eventual conviction of the petitioner."   (Doc. 1-1, pg 17).

Petitioner further alleges that he provided his counsel with names of "targeted individuals" and that these individuals did not participate (i.e. buy or sell drugs) with the petitioner because they feared "that the petitioner was conducting an operation."   According to the petitioner, such an operation requires complete secrecy and counsel failed to call several witnesses who could have testified that the petitioner "was recognized as a law enforcement officer who secretly conducted operation, made arrests and filed internal documentation subsequent to making arrests in order to maintain the much required secret atmosphere of such operations."   (Doc. 1-1, pg 22).   Petitioner lists six individuals and provides a brief summary of their expected testimony.

The government points out that the petitioner is not actually arguing an alibi defense, but instead is arguing a type of affirmative public authority defense (i.e. petitioner was not somewhere else at the time of the offenses; rather he was committing the offenses as part of his official duties.) *See* Federal Rule of Civil Procedure 12.3.   However, petitioner is *pro se* and *pro se* filings are not required to explicitly refer to the proper statute or legal theory in order to state a cause of action as long as relief is possible under that statute or theory consistent with the facts pled.   *See Kennedy v. National Juvenile Detention Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999), *cert. denied*, 120 S. Ct. 1169

(2000); *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992).

Here, the Court fully understands the petitioner's claims and finds that they have no merit. The Court agrees with the government that if petitioner's counsel would have raised this defense, and/or presented witnesses with regard to this defense, it would have led to the introduction of petitioner's proffers in rebuttal at trial.   Petitioner's proffers would have completely defeated such a defense as the information the petitioner provided completely contradicts any claim that he was engaged in official law enforcement duties at the time of the illegal activities.   *(*Doc. 12-1).

The United States Court of Appeals for the Seventh Circuit has held that, "[w]e initially explained that under the plain language of the proffer agreement, the only limitation on the government's use of the proffer statements was that the government could not introduce the statements during its case-in-chief."   *United States v. Williams*, 298 F.3d 688, 693–94 (7th Cir. 2002).   Therefore, as noted in petitioner's counsel affidavit, petitioner's proffers could have been used to rebut any testimony that the petitioner was engaged in the activities as part of his official duties.  (Doc. 13-15).

The Court notes that petitioner alleges that he, "[n]ever gave, much less [s]igned any 'proffer' , nor did he agree to do such a thing, it was not signed nor did it contain any proof of agreement, infact, as the Petitioner was in view of such a insulting claims, But the Petitioner did not refuse to sign any Proffer, because he never seen one, and dose not have any knowledge of a proffer, until after the Governments response to my filing of the original § 2255."  (Doc. 24, pg 23, *incorrect grammar and spelling in original*.)   However, Document 12-1 demonstrates that the petitioner participated in proffer interviews on July 7 & 10, 2009 and August 14, 2009.  The

document bears the initials of the petitioner along with the initial of his counsel at that time[2] and, contrary to petitioner's claim, the "Acknowledgment and Agreement of Raymond Martin" with regard to the proffer is signed by the petitioner and his counsel.  As such, the Court finds that petitioner did participate in proffer interviews and the proffers could have been used in rebuttal at the petitioner's trial.

The government also notes numerous elements of the petitioner's offenses -such as stealing evidence, co-mingling funds, and threatening witnesses – that would also defeat a public-authority defense.  The Court acknowledges and agrees, but finds it unnecessary to specifically address each of these arguments since the proffers are sufficient to indicate that petitioner's counsel's trial strategy of not pursuing a public-authority defense was well within the wide range of professionally competent assistance.

Petitioner also argues that his counsel failed to fully investigate a potential "alibi defense." (Doc. 1-1, pg 16).   He cites to *Harris v. Cotton*, 365 F.3d 552, 556 (7th Cir. 2004) which stated that, "[t]he Supreme Court has repeatedly held that a failure to conduct a reasonable investigation may satisfy the performance prong of *Strickland*."   If counsel was not ineffective in failing to present a public-authority defense, then it follows that he was not ineffective to investigate such a defense.   However, even if petitioner could establish that the failure to investigate was unreasonable, petitioner would still fail on the second prejudice prong of *Strickland*.   "Prejudice will be found when there is a reasonable probability that, but for the deficient performance of counsel, the outcome of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings."   *Harris v.*

---

2. Attorney Melissa Day of the Federal Public Defender's Office, Benton, Illinois, represented the petitioner during the proffers.

*Cotton*, 365 F.3d 552, 555 (7th Cir. 2004).   Here, as noted above, if proffers were submitted in rebuttal of any such defense, it would eliminate any reasonable probability that the outcome of the proceedings would have been different.

The reasoning above applies equally to petitioner's claim that counsel was ineffective in not calling "alibi" witnesses.   Petitioner lists six (6) witnesses that he argues should have been interviewed and called as witnesses in support of the defense.   However, there is no indication that any of these witnesses would testify that the petitioner was in the line of duty and performing official business at the time the offenses were committed.

"A defendant's lawyer has, it is certainly true, no duty to make a *frivolous* argument; and there is a tactical reason not to make weak arguments."   *United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003).   A public-authority defense would not only have been a weak argument, but would have likely resulted in reducing the credibility of any valid defenses put forth at trial.   As such, petitioner's trial counsel was not ineffective in failing to investigate, present, and/or call witnesses with regard to an "alibi" defense.

The Court notes that in the petitioner's supplement to his petition, he cites to the recent United States Supreme Court decision in *Johnson v. United States*, -- U.S. -- , 135 S. Ct. 2551 (2015) (holding that an increased sentence under the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e) violates the right to due process).   *Johnson* is not applicable to petitioner's § 2255 for several reasons.   First, petitioner was not sentenced under 18 U.S.C. § 924(e), but under § 924(c) and second, the Johnson case was not decided until after the petitioner was sentenced on January 19, 2011.   Petitioner's counsel could not be ineffective for failing to argue a case that had yet to be decided.

Also, as the government notes, if petitioner is attempting to add a new substantive claim based on *Johnson*, such a claim would be untimely as petitioner had one year from the date of the decision in *Johnson* (June 26, 2015), to file a habeas claim and petitioner's supplement was not filed until September 7, 2016.   As such, any claim under *Johnson* would be untimely.

However, the Court notes that petitioner's reply states that *Johnson* was being raised not as a new claim, but in support of his initial claim regarding his "alibi" and "sting" operation defense for persuasive reasoning.   As stated above, the Court has found that the petitioner's counsel was not ineffective for failing to present an "alibi" defense and a review of *Johnson* does not change that determination.

 (5) Whether Petitioner was denied due process by ineffective assistance of counsel for failing to object to the weapon related charges.

Petitioner carries over his argument that he was involved in a "sting" operation into his argument that his counsel was ineffective for failing to object to the weapon related charges.    He states that since he was involved in a "sting" operation, he was lawfully carrying his service revolver "within the parameters of his official duties."   (Doc. 1-1, pg. 24).   He further argues that the government failed to prove that, "the petitioner even possessed it during those alleged times" of the alleged offenses.

Petitioner states that the "In Furtherance Of" element of Title 18 U.S.C. § 924(c) was not proven because there was no nexus between the firearm and the alleged offenses.   Specifically, petitioner states that, "the service revolver worn by the petitioner was irrelevant" because he was, "dressed in his sheriff's uniform, drove a marked sheriff vehicle, brandished a law enforcement badge, not to mention that he was the elected sheriff."   (Doc. 1-1, pg. 26).   Petitioner argues that

the possession of the weapon was a required part of his official position and its mere presence is insufficient to demonstrate that it was used "in furtherance" of any crime.   He further argues that his counsel was ineffective for failing to argue a lack of, "some nexus between the service revolver and alleged drug trafficking operation."   As such, the petitioner states that, "[t]he ineffective assistance of counsel in failing to challenge the sufficiency of the establishment of the elements of § 924(c) resulted in petitioner's conviction and as a result, two life sentences."   (Doc. 1-1, pg. 28).

Petitioner also argues that, even if a nexus could be established, counsel was ineffective for failing to argue that petitioner possessed the same weapon and should not have been convicted of more than one count of § 924(c).   He cites to the recent decision in *United States v. Cambell*, 775 F.3d 664, 670 (5th Cir. 2014)[3], *cert. denied*, 136 S.Ct. 76, 193 L.Ed.2d 71 (2015), which held:

> Utilizing principles of statutory interpretation, this court in *Phipps* decided that the unit of prosecution under § 924(c)(1) is the possession (or use, or carrying) of a firearm in furtherance of a predicate offense. 319 F.3d at 184. Given this unit of prosecution, § 924(c)(1) does not authorize multiple convictions for a single possession of a single firearm. *Id.* at 186. The statute only allows for as many firearm counts as there are possessions of the firearm. *Id.* If the jury only found that Campbell possessed one firearm (i.e. the handgun with the laser pointer) in connection to his marijuana and ecstasy trafficking offenses, that possession would have constituted a singular unit of prosecution under § 924(c)(1). For those reasons, on the facts of this case—namely, the simultaneous presence of multiple guns and some evidence that only one gun was actually possessed by the defendant—the jury should have been instructed that in order to find a second § 924(c)(1) conviction, the defendant must have been found to possess a firearm separate and distinct from the firearm possessed in the first § 924(c)(1) count.

Petitioner also notes that the Seventh Circuit has held in *United States v. Cureton*, 739 F.3d 1032, 1035 (7[th]Cir. 2014), that:

---

3  Non-controlling precedent, but the Court reviewed and considered the reasoning of the decision.

While the government maintains two convictions are proper because he used the gun in connection with two different predicate offenses, both convictions are based on the exact same conduct—Cureton pointing a gun at his roommate and demanding she make calls to obtain money. Because there is only a single use of a single gun, and the predicate offenses were committed simultaneously without any differentiation in conduct, only one § 924(c)(1) conviction can stand.

However, the *Cureton* court went on to state that:

We have also held that distinctly committed crimes, even those committed on the same day, can support multiple § 924(c) violations and the consecutive sentences that result.   So where an armed defendant sold crack to one person in the morning, and after arming himself again sold crack to another person in the afternoon, we said, "These were unquestionably separate drug offenses, and therefore his carrying of a gun during each of them constituted two violations of section 924(c)."

*Id.* at 1041–42 (*citations omitted*).

Petitioner argues that his offenses, while not committed simultaneously, were the same – "the transaction involves the same two individuals and the service revolver is the same."   (Doc. 1-1, pg. 31).   He further states, "This circuit has not reached a decision with respect to a case which has a similar fact pattern as the one at Bar."   Regardless of whether this circuit has reached a decision, petitioner states that, "[n]evertheless, counsel was ineffective for failing to advance the aforementioned argument."   (Doc. 1-1, pg 31).

However, the petitioner's counsel did advance the arguments that petitioner's possession of a firearm was in the course of his duties and not related to drugs and that there should have been a single 924(c) charge.   At trial, petitioner's counsel argued:

On Counts 4 and 5, carrying a firearm during and in relation to a drug crime.   He was the sheriff, still is, but certainly was the sheriff in October, November, December of '08 and certainly on May 4th and May 11th of 2009. You've heard evidence about how often Sheriff Martin, Mr. Martin, would wear a firearm. Sometimes he would wear them around town. Sometimes the deputies didn't see

him with one. Sometimes during search warrants he wouldn't wear one. Sometimes he would wear one. . . . It is within his scope of duties as the sheriff or as anybody from law enforcement to wear a gun. The question here becomes during and in relation to a drug crime...As the sheriff he was legally empowered and some might even say required to wear a weapon and he did it. And he had other duties on the day of May 4th and May 11th, and it has nothing to do with what we've been watching here for two weeks. *See United States v. Martin*, 09-cr-40037-JPG, Doc. 131, pgs. 1222-26.

At the resentencing hearing, petitioner's counsel argued:

"[w]e rarely see 924(c)'s that are kind of stacked on one another like we've got here.  . . .  We normally would see a subsequent 924(c) to somebody who is pedaling dope and carrying a gun, gets convicted, then goes back out and does it again, is carrying a gun a second time.  . . . This particular activity of Mr. Martin, you've got two 924(c)'s going on basically at around the same time period."

*See United States v. Martin*, 09-cr-40037-JPG, Doc. 272, pg. 40.

Petitioner places his argument on the fact that the incidents involved the same individuals and that same revolver – only at different times.  "Under section 924(c), to establish that the firearm was used "during and in relation to" the drug offense, the government must establish that the defendant transported a firearm during a drug offense. The focus of this analysis rests on the location of the firearm in relation to the drugs: "if the drugs and the gun are together in the same place, it is nearly an inescapable conclusion" that they satisfy this prong for a conviction."  *U.S. v. Jackson,* 300 F.3d 740, 747 (7th Cir. 2002).  In this case, there was photographic evidence showing the petitioner with his firearm during two of the marijuana distributions.  (Docs. 13-10 & 13-11).  Further, as the government notes, petitioner's counsel vigorously cross-examined appropriate witnesses with regard to the petitioner's firearm.  (Doc. 13, pgs 53-55).

Therefore, there is no basis for petitioner's claim that he was denied due process by ineffective assistance of counsel for failing to object to the weapon related charges as the record clearly indicates that petitioner's counsel put forth a defense at trial and at sentencing.

The Court notes that petitioner's supplement cites to *Rosemond v. United States*, 134 S.Ct. 1240 (2014), with regard to the firearm charges.   Petitioner cites to several recent cases throughout his supplement.   Although petitioner claims that these cases are cited for persuasive reasoning, the issue in his § 2255 is whether petitioner received ineffective assistance of counsel. This is not a second bite at the apple based on more recent case law.   Counsel cannot be expected to argue cases yet to be decided.

> (6)     Whether Petitioner was denied due process by ineffective assistance of counsel for failing to contact and call relevant witnesses.

Petitioner argues that, "counsel's failure to even investigate the value or otherwise worth of the substance of a witness' potential testimony, constituted in and of itself, 'per se' ineffectiveness."   Petitioner claims that he was "highly prejudiced" by his counsel's failure to seek out and interview the witnesses that petitioner identified.   In his motion, petitioner identifies five witnesses[4] and briefly outlines the testimony that the witnesses could have provided at trial. Those witnesses are:

  a.    Dam Lawyer.   An employee at the courthouse who petitioner alleges would have testified that her office was close to the alleged marijuana plants and that if such plants were growing there, "she would have been able to smell the marijuana."

  b.   Kevin Chapman.   With regard to the allegations of witness tampering, Mr. Chapman would have testified that he had a tractor for sale and petitioner had agreed to buy it. Mr. Chapman could have testified that all conversation between himself and the petitioner pertained to the alleged tractor sale.

---

4.   Petitioner states that the witness list is "not exhaustive."

    c.   Mr. Cabrera.   Would have been able to testify that he agreed to sell a truck to the petitioner and although petitioner paid for the truck, it was never received.

    d.   John Robinson.   Deceased, but alive at the time of trial.   If he had been called as a witness, petitioner states that he would testify that the petitioner was never involved "in the sale or otherwise transaction of drugs."

    e.   Floyd Hogg.   Mr. Hogg is also deceased, but was in pretrial confinement with the petitioner and could have testified at trial about Mr. Chapman's and petitioner's conversations with regard to the sale of the tractor.

Petitioner claims that his counsel was not only ineffective in failing to interview and determine the witnesses' potential testimony, but that counsel was also ineffective for not listening, "to his client (the petitioner) who actually provided counsel with a list of potential witnesses, that could have provided the jury with reasonable doubt thereby acquitting him." (Doc. 1-1, pg 34).

First, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.   A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."   *U.S. v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)(*footnote omitted*). Petitioner has provided no actual testimony or affidavits in support of his claim as to the context of these witnesses' potential testimony.

However, to give the petitioner every benefit, the Court will address these witnesses.   As the government notes, it appears that petitioner has confused "Kevin Chapman" with "Kevin Brown."   Kevin Brown was called as a witness making any claim with regard to Kevin Brown moot.   *See United States v. Martin*, 09-cr-40037-JPG, Doc. 128, pgs 791-846.   Petitioner also claims that, "the petitioner's son, Cody, was never called to the witness stand by counsel for the

petitioner to corroborate the purchase of the tractor."   This claim is also moot since Cody Martin was called as a witness at petitioner's trial.   *See United States v. Martin*, 09-cr-40037-JPG, Docs. 128 & 129.   Although these witnesses were called by the government, petitioner's counsel had an opportunity to cross examine and bring forth any testimony he deemed relevant.

Next, the proposed testimony with regard to Ms. Lawyer and Mr. Cabrera, even if they had testified as petitioner claims, would be irrelevant.   Whether Ms. Lawyer could "smell" marijuana has no bearing on whether marijuana plants were actually located in the evidence room.   Unless Ms. Lawyer could have testified to being physically present in the evidence room at the time at issue, she would have no actual personal knowledge of whether or not marijuana plants were located there.

Mr. Cabrera's proposed testimony that petitioner purchased a truck from him is also irrelevant.   The only purpose that the Court can gleam (since petitioner does not actually state) would possibly be a pattern of the petitioner purchasing farm equipment from jail and having his son complete the transaction.

The alleged testimony of Mr. Robinson would have been as a character witness since there is no indication that Mr. Robinson had actual knowledge that petitioner, "was never involved in the sale or otherwise transaction of drugs."   That petitioner and Mr. Robinson were "well-known" to each other only indicates that Mr. Robinson would have testified that such activities were out of character for the petitioner.

Finally, Mr. Hogg's proposed testimony that he heard Mr. Brown state that he had a tractor for sale would have been unnecessary at trial since Mr. Brown was called as a witness and testified.

Petitioner provided no support for the proposed testimony of the witnesses listed and has shown no prejudice by the failure to call these witnesses.   His claim that he was "highly prejudiced" because these witnesses could have cumulatively "provided the jury with reasonable doubt thereby acquitting him" is purely speculative.

"No one disputes the proposition that adequate pretrial investigation is essential to the proper representation of a criminal defendant. The challenge, of course, is to determine how much investigation is adequate. And that determination, like so many other decisions that an attorney must make, is a matter of professional judgment."   *U.S. v. Ashimi*, 932 F.2d 643, 648 (7th Cir. 1991).   Here, Petitioner's counsel's trial strategy of not pursuing specific witnesses was well within the wide range of professional judgment and professionally competent assistance.

(7)     Whether Petitioner was denied due process by ineffective assistance of counsel for failing to argue an entrapment defense.

Petitioner argues that Jeremy Potts was an "informant for the law enforcement" and was working on behalf of the government, therefore, when Mr. Potts "induced the petitioner to sell him marijuana," it was entrapment.   He further argues that counsel was ineffective for failing to argue an entrapment defense.

Petitioner is correct that the two elements of entrapment are: (1) that the government, or its agents, induced the defendant to commit the crime; and (2) that the defendant was not otherwise predisposed to commit the crime.   Predisposition, "the principal element in the defense of entrapment," focuses upon whether the defendant was an "unwary innocent" or, instead, an "unwary criminal" who readily availed himself of the opportunity to perpetrate the crime. *Mathews v. United States*, 485 U.S. 58, 63, 108 S. Ct. 883, 886, 99 L. Ed. 2d 54 (1988).   Petitioner

claims that, "the government would have a Herculean task, at best, of proving beyond a reasonable doubt that a five (5) term highly decorated sheriff, recipient of the states only Medal of Honor award was predisposed to engage in a drug sale without the inducement of the government."

Petitioner's argument that Mr. Potts became a confidential source to reduce any potential jail time is incorrect.   The testimony indicates that it was Mr. Potts and his father, Joel Potts, who initiate contact with law enforcement.   Mr. Potts was not under arrest at the time of his decision to cooperate.  *See United States v. Martin*, 09-cr-40037-JPG, Doc. 126, pgs. 298-299.   Further, as with the public-authority defense, the government was armed with the petitioner's proffers and any effort by the petitioner to claim inducement would have been defeated by his proffer.

> Of course, it is very unlikely that the defendant will be able to prove entrapment without testifying and, in the course of testifying, without admitting that he did the acts charged.... When he takes the stand, the defendant forfeits his right to remain silent, subjects himself to all the rigors of cross-examination, including impeachment, and exposes himself to prosecution for perjury. Inconsistent testimony by the defendant seriously impairs and potentially destroys his credibility. While we hold that a defendant may both deny the acts and other elements necessary to constitute the crime charged and at the same time claim entrapment, the high risks to him make it unlikely as a strategic matter that he will choose to do so.

*Mathews v. United States*, 485 U.S. 58, 65–66, 108 S. Ct. 883, 888, 99 L. Ed. 2d 54 (1988)(quoting *United States v. Demma*, 523 F.2d 981, 985 (CA9 1975)).

The above quote puts forth all the reasoning for a counsel not to pursue an entrapment defense. Also, as stated by petitioner's counsel, besides the proffers, "his co-conspirators would have testified to not only the counts alleged in this case but also previous cannabis trafficking." (Doc. 13-15, ¶ 17).   Therefore, petitioner's counsel's trial strategy of not pursuing an entrapment

defense was well within the wide range of professionally competent assistance.

> (8)   Whether Petitioner was denied due process by ineffective assistance of counsel for failing to object to the seizure of Petitioner's assets without due process that in effect prohibited Petitioner from retaining counsel of his choosing.

Petitioner's final claim is that his government appointed counsel was ineffective for failing to object to the seizure of the petitioner's assets without a hearing.  Due to the seizure of his assets, petitioner argues that he was denied an opportunity to obtain counsel of his choosing.

The United States Supreme Court has recently held that, "that the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." *Luis v. U.S.*, 136 S. Ct. 1083, 1088 (2016).   Further, in *U.S. v. Kirschenbaum*, 156 F.3d 784, 792 (7th Cir. 1998), the Seventh Circuit has held that, "due process prohibited restraining such funds without a hearing if the defendant could show a bona fide need to use the funds to obtain counsel."

However, these cases are inapplicable to the petitioner.  Petitioner was given an opportunity to hire counsel of his choice with the understanding that the government would release seized assets and petitioner chose not to obtain private counsel.  *See* Docs. 13-15 & 13-28.  No hearing was necessary.  No show of a bona fide need was required. The government offered to make any necessary seized funds available for private counsel and petitioner declined.  Petitioner was never denied an opportunity to obtain counsel of his choosing.

It is noted that in petitioner's reply, he raises for the first time an allegation that the government would only release the seized funds if, "I would have my wife sign over her (1/2) interest in the seizure amount of the money."  Petitioner did not inform the Court of an offer by the government to release funds for private counsel in his petition or in his supplement to the petition. His first acknowledgement that he had seized funds available for private counsel came in

his final filing and then he alleges that release of the funds was conditional. The allegation that the release of funds was conditional is not supported by the record.

Therefore, the Court finds that Petitioner was not denied due process by ineffective assistance of counsel for failing to object to the seizure of Petitioner's assets as petitioner was offered seized funds for counsel of his choosing.

Finally, the Court notes that petitioner's reply states that, "all attorneys, know a Bar Certified, Paid Counsel, is more knowledgeable, than the Court appointment of Counsel."   (Doc. 24, pg 11).   The government noted that the petitioner's counsel has a "stellar reputation as one of the foremost criminal defense attorneys in southern Illinois" and the Court agrees.   The government provided a quote from the petitioner's initial sentencing and it bears repeating here. This Court informed the petitioner at sentencing that he, "could have had F. Lee Baily, Johnny Cochran, and Richard 'Ray Horse' [Racehorse] Haynes in addition to John O'Gara on your defense team, and the result would have been the same.   Mr. O'Gara didn't have much to work with in light of the overwhelming evidence against you."   *See United States v. Martin*, 09-cr-40037-JPG, Doc. 161, pgs 76-77.

   4.   **Conclusion**.

As Justice Earl Warren once stated, "The police must obey the law while enforcing the law.[5]" The Petitioner did not and he now claims ineffective assistance of counsel resulted in his conviction.   It was not ineffective assistance of counsel, but the overwhelming evidence at trial that resulted in petitioner's conviction.   This Court has found no merit in petitioner's claims.

---

5.   "Earl Warren." BrainyQuote.com. Xplore Inc, 2016. 8 November 2016.
https://www.brainyquote.com/quotes/quotes/e/earlwarren112609.html

The Court has reviewed all the briefs, records, supplements, and documentation submitted in this matter although the Court may not have addressed each specific argument within this order.

Based on the above, Petitioner Raymond M. Martin's Motion (Doc. 1) to Vacate, Set Aside or Correct his sentence pursuant to 28 U.S.C. § 2255 is **DENIED.**

5. **Certificate of Appealability.**

Having denied petitioner's motion, the Court must grant or deny a certificate of appealability.   *See* Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts; 28 U.S.C. § 2253(c).   Section 2253(c)(2) provides that a certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.   Mr. Martin has made no such showing.   Therefore, the Court **DENIES** a certificate of appealability.   Pursuant to Rule 11(a), Mr. Martin may not appeal the denial of a certificate of appealability, but he may seek a certificate from the Court of Appeals for the Seventh Circuit.

**IT IS SO ORDERED.**

**DATED:**   1/19/2017

*s/J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**